DeGroot *v.* McCotter.

DE GROOT and wife, appellants, and McCOTTER, respondent.

Bill to foreclose mortgage to secure bond conditioned for payment of principal in five years from date, with interest payable quarterly, and containing an agreement, that should default be made in the payment of the said interest, or of any part thereof, on any day whereon the same is made payable, and should the same remain unpaid and in arrear for the space of thirty days, then and from thenceforth, the principal sum, with all arrearages of interest, should, at the option of the obligee, his executors, administrators, or assigns, become and be due and payable immediately thereafter, although the period limited for the payment thereof might not then have expired. *Held*—

1. That though time is of the essence of the contract, equity will not enforce a forfeiture of the credit if the omission to pay interest within the time specified has been occasioned by the acts or declarations of the complainant.

2. If the omission to pay interest within the time limited has happened by the negligence of the defendant, the forfeiture has been incurred and the contract will be enforced.

3. The court will not enforce a forfeiture of credit if the complainant is himself in fault, or has misled the defendant.

The opinion of the Chancellor is reported *ante, p.* 72.

*Mr. Magie,* for appellants.

*Mr. Flemming,* for respondent.

The opinion of the court was delivered by

DALRIMPLE, J.

The bill in this case was filed to foreclose a mortgage given to secure a bond, in the penal sum of $1000, dated on

the 1st day of November, 1864, conditioned for the payment of $500 on the 1st day of November, 1869, with interest from date, at the rate of seven per centum per annum, to be paid quarterly. The condition of the bond contains an express agreement, that should default be made in the payment of the said interest, or of any part thereof, on any day whereon the same is made payable, and should the same remain unpaid and in arrear for the space of thirty days, then and from thenceforth, that is, after the lapse of the said thirty days, the principal sum of $500, with all arrearages of interest, should, at the option of the obligee, his executors, administrators, or assigns, become and be due and payable immediately thereafter, although the period limited for the payment thereof might not then have expired.

The facts material to a correct decision of the case, as I gather them from the pleadings and proofs before us, are in substance as follows : the quarterly payments of interest upon the bond in question, were regularly and punctually made until the 1st day of May, 1866, when an alleged default was made in the payment of the interest which then fell due, and the same remained unpaid for more than thirty days; thereupon the complainant claimed that by reason of such default the whole principal had become due, and accordingly, on or about the 2d of June, then next following, demanded payment thereof, with all arrears of interest. The demand was not complied with, nor has the quarterly interest, which fell due on the 1st of August, 1866, been paid. On the 22d day of November, 1866, the bill to foreclose was filed, wherein it is claimed that the credit given by the bond had been forfeited, by reason of the non-payment of the May and August interest. The defendant is a resident of New York, and the complainant of Jersey City, in this state. On the 17th day of April, 1865, the original mortgagee assigned the mortgage and bond to the complainant. Some time prior to the 1st day of May, in the year last mentioned, the defendant had become the purchaser of the equity of redemption in the mortgaged premises, and had assumed the

payment of the mortgage debt. The first payment of interest made by defendant to complainant was on or about the 1st day of May, 1865, at defendant's place of business, in New York. The parties then and there agreed by parol, that the quarterly payments of interest should thereafter be made there, and the complainant promised to call at that place and receive the interest which would from time to time fall due, declining to give the street and number of his residence in Jersey City. According to that arrangement, the interest payments were duly made until the 1st day of May, 1866. On or about the 2d of June then next, when complainant demanded payment of the principal, as well as interest of his bond, he was tendered the interest, but refused to accept it, saying that he wanted the principal as well as the interest. The reason of default, so to call it, in the payments of interest was because the complainant failed to call at the place appointed, and there receive the quarterly payments as they respectively fell due. The defendant defends this suit upon the ground that he is not, under the circumstances, in default, and has not incurred a forfeiture of the day of payment, which will in equity be enforced. If the non-payment of the interest falling due in May or August, happened by the negligence of the defendant, the forfeiture has been incurred, and the contract will be enforced, as well in equity as at law. Such was the ruling of Chancellor Williamson in the case of *Baldwin* v. *Van Vorst*, 2 *Stockt.* 577. In the decision of that case, as well as the reasoning by which it is supported, I entirely concur. On the other hand, if the default or omission to pay the interest within thirty days after it became due, was the result of honest mistake or misapprehension, into which the defendant was led by the acts or declarations of the complainant, a court of equity will not, under such circumstances, hold the failure to pay, a forfeiture of the credit. If the complainant failed to call at the time and place appointed for payment of his interest, and by reason of such failure the defendant was not able to make payment within the precise time fixed, equity will not con-

2 Y *

sider the defendant as in default. He has an excuse for non-payment, which will, in a court of equity, be regarded as valid, though by the condition of the bond time is of the essence of the contract. In the case before us, a court of equity will, contrary to the general rule, enforce a forfeiture if incurred, yet there must have been a " default," according to the meaning of that term as used in the condition of the bond. If the complainant has given further day of payment, or in any other way waived the payment, according to the letter of the bond, the default contemplated and provided against has not happened. In the case of *Albert* v. *Grosvenor Investment Co.*, 3 *Law Rep.* (*Court of Queen's Bench*) 123, it was held at law, that there had been no default in payment of a mortgage, similar to that now in question, where an extension of time of payment had been given by parol. The Chief Justice in his opinion in that case says : " I see nothing which goes to show that, if by the consent of the person who is to receive payment the time of payment is extended, the omission to pay within the time specified must be a ' default' within the meaning of the word in the bill of sale ; and it would be monstrous to hold that it was a default, for the mortgagee might always lead the mortgagor into a snare by consenting that the time for payment should be extended, and then coming down upon him by insisting that there had been a default."

It is not now necessary to determine whether the agreement by parol can be admitted to change the legal effect and operation of the writing under seal. The question here is, whether the default has happened, if the omission to pay was caused by the defendant's reliance in good faith on the parol agreement. I cannot see how the complainant can conscientiously insist on a forfeiture, when all the defendant did, or rather omitted to do, was in pursuance of a previous agreement between him and the complainant. The case of *Noyes* v. *Clark*, 7 *Paige* 179, is directly in point. In that case, shortly before the interest became due, an assignee of the mortgage, who had assigned the same and guaranteed the payment, informed the mort-

gagor of the assignment, but gave him no information as to the residence of the assignee. The mortgagor, after several ineffectual attempts to find the last assignee, tendered the interest to the first assignee, who refused to receive it, on the ground of the last assignment. A short time thereafter, while the mortgagor was endeavoring to find the residence of the last assignee, proceedings in foreclosure were commenced, and it was claimed that the day given for the payment of the principal sum had been forfeited. The court held, that to take advantage of the non-payment of the interest and enforce the forfeiture, would be inequitable and unconscientious. The defendant in the case before us, did not forfeit his credit by his failure to pay the quarter's interest due on the 1st of May. It is claimed, however, that the non-payment of the August interest worked a forfeiture and was a default, according to the proper meaning of that word as used by the parties. It is said, that when the complainant in June insisted that the principal had become due by reason of the non-payment of the preceding quarter's interest, he thereby gave the defendant fair notice that neither interest nor principal would thereafter be called for at defendant's place of business, according to the previous arrangement, and hence, it is argued, that the defendant from thenceforth had no right to rely upon the parol agreement, but was bound to tender the interest to the complainant in person, which he did not do. It appears to me that what passed between the parties in June, was calculated to mislead the defendant and throw him off his guard. The complainant did not say or intimate that he should thereafter require the fulfillment of the condition of the bond according to its letter. He declined to accept the May interest, which was then tendered, because not accompanied with an offer of the principal. He insisted on his right to both principal and interest, and the fair inference from what he said was, that it would be useless to offer to pay interest at any time or place, unless the principal, as well as interest, was tendered. He said, in effect, that he

would receive no more quarterly payments of interest, and that he need not be expected to call for any more, not because he recalled his parol agreement so to do, but on the ground that, from what had already taken place, he was entitled to the penalty, and that he would accept that and nothing else. He has always since insisted that such is his right, and never intimated to the defendant that interest payments would be received at any time or place. Under these circumstances, I do not think the defendant was bound to seek the complainant and tender him the August interest on the precise day when it fell due, or within thirty days thereafter, in order to save a default. In the first place, the complainant had advised the defendant that such payment of interest would not be accepted if tendered; and in the next place, if the complainant was willing to waive the alleged default and receive the August interest, he should have called for it according to agreement, or at least have given the defendant fair notice that payment, according to the letter of the bond, would be required. In this connection, it must not be forgotten that the defendant testifies that in the latter part of July he tendered complainant the May as well as August interest, and the complainant refused to receive either, on the ground that he was entitled to principal as well as interest. Though the complainant denies this, yet he does not say that he ever, after the conversation in June, shifted his ground or resolved in his own mind not to insist on a forfeiture, or intimated to the defendant that interest would be received without the principal. I think it therefore fair to say that the complainant, by his own conduct, prevented a strict tender. According to the principles already adverted to, the non-payment of the August interest was not a default of which the complainant can take advantage in a court of equity. He is here asking the enforcement of a forfeiture according to the letter of the bond. We cannot grant his prayer, because it does not appear that he is without fault. It is not necessary to consider whether, as insisted by defendant, the complainant acted in bad faith, or

from a mere mistaken notion of his legal rights. In either event, the result was the same—to mislead the defendant.

The conclusion to which I have come is, that the decree of the Chancellor should be reversed, and that the proceedings of the complainant must be stayed, upon the payment of the moneys now due, according to the agreement, without costs. An order must therefore be entered, that upon payment to the complainant, or his solicitor, within ten days, of the amount now due as aforesaid, to be ascertained if necessary under the direction of the Chancellor, all proceedings upon the bond and mortgage mentioned in the complainant's bill, be stayed, until default shall be made according to the condition of the bond and mortgage, and without reference to default in the payment of interest moneys heretofore due. The ten days within which the said moneys are to be paid as aforesaid, to be computed from the time when the parties shall agree upon, or the court shall ascertain the amount thereof.

The decree was reversed by the following vote:

*For reversal*—BEASLEY, C. J., DALRIMPLE, DEPUE, ELMER, KENNEDY, OGDEN, OLDEN, WOODHULL. 8.

